IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RONALD A. STAFFORD,                                    CV 05-6104-MA

        Plaintiff,                              OPINION AND ORDER

v.

JO ANNE B. BARNHART,
Commissioner of Social
Security,

        Defendant.

KATHRYN TASSINARI
ROBERT BARON
CRAM, HARDER, WELLS & BARON, P.C.
474 Willamette
Suite 200
Eugene, OR 97401
(541) 686-1969

        Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
NEIL J. EVANS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1053

DAVID M. BLUME
Special Assistant United States Attorney
701 Fifth Avenue, Suite 2900 MS/901
Seattle, WA  98104-7075
(206) 615-2212

        Attorneys for Defendant

1  - OPINION AND ORDER

MARSH, Judge.

Plaintiff filed a civil action for judicial review of a final decision of the Commissioner denying his application for supplemental security income benefits on (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f. Plaintiff alleges the Administrative Law Judge (ALJ) erred in finding he is not entitled to benefits. Plaintiff seeks an order reversing the Commissioner's decision and remanding the case for an award of benefits. The Commissioner contends her decision is based on substantial evidence and is free from legal error and, therefore, requests the Court to affirm her decision.

This court has jurisdiction under 42 U.S.C. § 405(g). For the following reasons, the Court **REVERSES** the final decision of the Commissioner and **REMANDS** the matter to the Commissioner for further proceedings consistent with this Opinion and Order.

## BACKGROUND

This is the second time the Commissioner has denied a claim by Plaintiff for SSI benefits. Plaintiff first applied for SSI in August 1998. In August 2000, his application was denied following a hearing before an ALJ. Plaintiff did not appeal the decision to the Appeals Council.

On April 9, 2001, plaintiff filed the pending application for SSI. The application was denied initially and on

reconsideration.  Plaintiff requested a hearing, which was held
on November 20, 2002, before a different ALJ.  The ALJ conducted
a supplemental hearing on May 13, 2003.  On July 25, 2003, the
ALJ issued a decision that plaintiff was not eligible for SSI
benefits.  Plaintiff filed an appeal with the Appeals Council.
On February 15, 2005, the Appeals Council denied plaintiff's
request for review and, therefore, the ALJ's decision became the
final decision of the Commissioner for purposes of judicial
review.

## LEGAL STANDARDS

The initial burden of proof rests on the claimant to
establish disability.  Roberts v. Shalala, 66 F.3d 179, 182
(9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996).  To meet
this burden, a claimant must demonstrate the inability "to engage
in any substantial gainful activity by reason of any medically
determinable physical or mental impairment which . . . has lasted
or can be expected to last for a continuous period of not less
than 12 months."  42 U.S.C § 423(d)(1)(A).  The Commissioner
bears the burden of developing the record.  DeLorme v. Sullivan,
924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision
if it is based on proper legal standards and the findings are
supported by substantial evidence in the record as a whole.
42 U.S.C. § 405(g).  "Substantial evidence means more than a mere

scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if the "evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

If the Commissioner denies a prior claim on the grounds that a claimant is not disabled, such denial normally gives rise to a presumption that the claimant continues to be able to work after the date of the finding. Lester v. Chater, 81 F.3d 821, 827 (9th Cir.1995). "'The presumption does not apply, however, if there are 'changed circumstances.' An increase in the severity of the claimant's impairment' [would be such a change in circumstances]." Id. (Internal citation omitted).

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.), cert. denied, 121 S. Ct. 628 (2000). "If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." Lewin v. Schweiker,

654 F.2d 631, 635 (9th Cir. 1981).

## **DISABILITY ANALYSIS**

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled.  <u>Bowen v. Yuckert</u>, 482 U.S.137, 140 (1987).  <u>See also</u> 20 C.F.R. § 416.920. The claimant bears the burden of proof at steps one through four. <u>See</u> <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999).  Each step is potentially dispositive.

Here, at Step One, the ALJ found plaintiff had not engaged in substantial gainful activity since the onset of his alleged disability.  20 C.F.R. § 416.920(b).

At Step Two, the ALJ found plaintiff suffers from borderline intellectual functioning, other cognitive defects, personality disorder, and depression, that are severe within the meaning of 20 C.F.R. §§ 404.1520©) and 416.920(c)(an impairment or combination of impairments is severe if it significantly limits an individual's physical or mental ability to do basic work activities).

At Step Three, however, the ALJ found plaintiff's impairments did not meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(iii) and (d), and § 404.920(a)(4)(iii) and (d).  The ALJ found plaintiff has the residual functional

capacity to perform exertional activities without restriction.
Because plaintiff has an "approximately 3rd grade level
comprehension," the ALJ found he can read and understand only
brief and simple written instructions, and oral instructions
must be simple and short.  The ALJ also found plaintiff has
moderate limitations dealing with the general public or coworkers
appropriately, setting realistic goals, and making plans
independently.

At Step Four, the ALJ found plaintiff was able to perform
his past relevant work as a dishwasher and janitor.

At Step Five, the ALJ found "it is commonly know (<u>sic</u>)" that
these two jobs, as well as the job of bus boy, which plaintiff
can also perform, exist in large numbers in the national and
local economy.

Accordingly, the ALJ found plaintiff was not under a
disability.  20 C.F.R. §§ 404.1520(f) and 416.920(f).

In making these findings, the ALJ concluded that plaintiff's
mental condition had not changed for the worse since he was first
denied benefits.  On the contrary, the ALJ concluded plaintiff's
mental condition had improved.  "The only possible change appears
to be continued improvement in the claimant's reported symptoms
of depression and anger management problems."

In contrast to the ALJ's conclusion, Plaintiff asserts his
mental condition has worsened since his original claim for

benefits was denied.  To support his assertion, plaintiff relies on new evidence, consisting of his testimony regarding his mental condition, and the medical records and opinions of examining psychologist, Peter Moulton, Ph.D.  Plaintiff contends this evidence establishes his "longstanding mental impairments have worsened" since he was last denied benefits.  Plaintiff argues the ALJ failed to give clear and convincing reasons for rejecting his testimony and Dr. Moulton's psychological opinion.

**DISCUSSION**

The threshold issue here is whether there is credible and substantial evidence to support plaintiff's assertion that his mental condition deteriorated between the Commissioner's original denial of benefits in August 2000 and the ALJ's second decision denying benefits in July 2003.

For the reasons that follow, I find plaintiff presented credible evidence to support his assertion that his mental condition deteriorated rather than improved after his first claim for benefits was denied.  The ALJ's finding to the contrary is not supported by substantial evidence.

**1.  Plaintiff's History.**

Plaintiff was 27 years old as of the date of the final decision denying his claim for SSI benefits.  He has a special education high school diploma although he is illiterate.  Medical records from his childhood into adulthood reveal plaintiff has

had ongoing physical health problems, including poor coordination and clumsiness, frequent headaches and reoccurring upper respiratory tract infections.  Plaintiff's most significant impairments, however, are borderline intellectual functioning, significant learning and cognitive difficulties as to reading, math, writing, and memory, and associated depression, anxiety, and anger management issues, manifested by aggression towards family members, peers, and co-workers.  Plaintiff's expressions of anger have been precipitated, <u>inter</u> <u>alia</u>, by tactful criticism, teasing and vulgar comments, and frustration at his inability to read.

Plaintiff has worked as a janitor, dishwasher, bus boy and shoe shiner.  Plaintiff obtained these jobs primarily through vocational training programs.  Most of the jobs were of short duration and ended by his being fired for fighting or walking off the job after being criticized by supervisors and/or co-workers for slow work.

**2.  <u>Plaintiff's Credibility</u>.**

Plaintiff testified the most serious problems that keep him from working are reading and anger.  The ALJ, however, found plaintiff's "testimony and other statements reveal a degree of inconsistency that cautions against accepting all of his statements entirely at face value."

A claimant who alleges disability based on subjective

symptoms "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce'" the symptoms alleged. (the <u>Cotton</u> test). <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 344 (9th Cir. 1991)(quoting 42 U.S.C. § 423(d)(5)(A) (1988)). <u>See also</u> <u>Cotton v. Bowen</u>, 799 F.2d 1403, 1407-08 (9th Cir. 1986). The claimant need not produce objective medical evidence of the symptoms or their severity. <u>Smolen v. Chater</u>, 80 F.3d 1276, 1281-82 (9th Cir. 1996).

If the claimant has met the standards set out in the <u>Cotton</u> test and there is no affirmative evidence to suggest the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting the claimant's testimony regarding the severity of his symptoms. <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918 (9th Cir. 1993). <u>See also</u> <u>Smolen</u>, 80 F.3d at 1283.

To determine whether the claimant's subjective testimony is credible, the ALJ may rely on (1) ordinary techniques of credibility evaluation such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) an unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. <u>Id</u>. at 1284 (citations omitted).

Here, there is no evidence of malingering by plaintiff. The

issue, therefore, is whether the ALJ gave clear and convincing reasons for not crediting plaintiff's testimony.  I find he did not do so.

The ALJ cited several purported inconsistencies in plaintiff's testimony, including: (1) the extent to which plaintiff drives or whether he even has a driver's license; (2) plaintiff's ability to ride the bus to travel around the community; (3) the extent to which plaintiff drinks alcohol; and (4) plaintiff's ability to handle money and make change.

The only evidence as to plaintiff's driving was plaintiff's testimony that he has never had a driver's license but he has driven a car before.  The ALJ did not identify how or why that testimony was inconsistent with any prior statement.  As to riding the bus, plaintiff testified it took him one to two months to learn how to use the bus system.  The ALJ does not explain how or why that testimony was inconsistent.  As to alcohol use, plaintiff acknowledged he drank alcohol on occasion and once in the past year had become intoxicated.  Again, the ALJ does not point to any prior testimony or evidence to contradict this testimony that is meaningful to an assessment of plaintiff's credibility.  Finally, plaintiff testified he did not handle money because he could not make change.  The ALJ, however, noted plaintiff's admitted drug use in the past (primarily marijuana) and he assumed, therefore, plaintiff must have purchased the

drugs.  In addition, the ALJ noted plaintiff goes shopping, and he pays the electricity and telephone bills.  The ALJ, therefore, assumed plaintiff must be able to handle money and make change. The ALJ's assumptions, however, are baseless.  There is no evidence plaintiff ever purchased drugs.  Plaintiff testified his mother went with him whenever he went shopping.  Finally, the ALJ's source for inconsistency regarding the payment of utilities is on a form on which a third party wrote that plaintiff is "responsible" for those bills.  The document does not reflect that plaintiff pays the bills himself.

None of the ALJ's reasons for doubting plaintiff's credibility are clear and convincing.  Nevertheless, the ALJ chose not to credit plaintiff's testimony regarding an important aspect of his claim.  Plaintiff testified he has a problem with anger because he does not "take what most people would for rude comments, vulgar language."  Tr. 504.  Instances of such comments are "[p]eople saying that I'm stupid, slow.  I'm a retard. Things that people would usually laugh off and let go.  I usually get very angry and let my mouth run away with what I think."  Id. Plaintiff testified that, at his last job, and at other jobs, he has called his supervisor "an "F" word and told him that his job was worthless and where to stick it."  Plaintiff testified to several occasions where he became angry at work and became so violent that, on one occasion he broke a fellow employee's arm

and, on another occasion, he urinated into the gas tank and broke the windshield of a fellow employee's car.

The ALJ, however, stated he was not persuaded there was a "strong link" between plaintiff's difficulty reading and his anger management issues because the record "does not show that [the inability to read] has ever been a trigger to any of the [plaintiff's] violent outbursts." Indeed, the ALJ posited that plaintiff's acknowledged interest in martial arts suggests a "predisposition towards violence."

On this record, I find the ALJ improperly rejected plaintiff's testimony regarding the connection between his ability to hold on to jobs and his anger management issues.

**2. <u>Examining Psychologist's Opinion</u>.**

On November 15, 2002, psychologist Peter Moulton, Ph.D, examined plaintiff at the request of the Senior and Disabled Services Division for the State of Oregon in order to assist plaintiff in processing his disability claim. Dr. Moulton reviewed medical records, interviewed plaintiff for 90 minutes, and conducted 3 ½ hours of psychological testing. At the conclusion of the examination, Dr. Moulton diagnosed: Axis I - reading disorder, mathematics disorder, disorder of written expression, cognitive disorder, intermittent explosive disorder; Axis II - personality disorder with borderline and dependent features, borderline intellectual functioning; Axis III -

Dyslexia; Axis IV - unemployment, dependence on family, illiteracy; and Axis V - GAF 40 serious social and occupational impairment - highest GAF past year 40.[1]  Dr Moulton concluded:

> While the current evidence indicates that Mr. Stafford would not be able to succeed in any normal work setting at this time, it is strongly recommended that efforts be made to find programs directed at rehabilitation and eventual employment.  The longer Mr. Stafford remains in his current state of dependency and disability, the more unlikely any change will occur.  It does seem that there is some likelihood that with appropriate rehabilitative programs that some change could occur within three to five years.

Tr. 453.

The examining physician's findings can constitute substantial evidence, and the ALJ may reject those findings only for "clear and convincing" reasons supported by substantial evidence in the record.  <u>Reddick v. Chater</u>, 157 F.3d 715, 725 (9th Cir. 1998).

The ALJ accorded Dr. Moulton's findings only "limited weight" because, in part, they were based on plaintiff's discredited testimony regarding plaintiff's driving history, drug and alcohol use, and ability to understand the bus system for

---

[1] The GAF is the "Global Assessment of Functioning."  Its purpose is to rate the social, occupational and psychological functioning of adults.  A score of 40 indicates "some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood.

transportation purposes. In addition, the ALJ rejected Dr. Moulton's opinion because Dr. Moulton's report does not reflect plaintiff's "current level of impairment is any more serious than was indicated in a prior assessment of psychologist James Wahl, Ph.D., in July 2001."

I find the ALJ's reasons for not crediting Dr. Moulton's opinion are not clear and convincing. First, as noted, the ALJ had no clear and convincing reasons to discredit plaintiff's testimony. Second, I disagree that Dr. Moulton's report reflects that plaintiff's condition has not deteriorated. Dr. Moulton found plaintiff suffered from intermittent explosive disorder whereas Dr. Wahl had earlier found the same condition was "in remission." In addition, Dr. Wahl assigned a GAF score of 50, which indicates, <u>inter alia</u>, a "serious impairment" in occupational ability, in contrast to a "major impairment" in such ability reflected by the score of 40 found by Dr. Moulton.

On this record, I find the ALJ did not give clear and convincing reasons for rejecting Dr. Moulton's assessment of plaintiff's ability to work.

As part of his report, Dr. Moulton made specific findings regarding functional limitations that would affect plaintiff's ability to work. <u>See</u> Tr. 462-462. The court credits Dr. Moulton's findings as to those functional limitations as true. <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1995).

At the hearing on plaintiff's claim, the ALJ did not ask the vocational expert any hypothetical questions regarding the availability to plaintiff of jobs in the local or national economy in light of the functional limitations found by Dr. Moulton.

Accordingly, the court remands this matter to the Commissioner for the limited purpose of determining, through hypothetical questions posed to a vocational expert, whether plaintiff's functional limitations, as described by Dr. Moulton, would enable plaintiff to engage in substantial gainful activity.

<u>**CONCLUSION**</u>

For these reasons, the Court **REVERSES** the final decision of the Commissioner and, pursuant to 42 U.S.C. § 405(g), **REMANDS** this matter for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 15   day of February, 2006.


 /s/  Malcolm F. Marsh
MALCOLM F. MARSH
United States District Judge